[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14413
Non-Argument Calendar

_____

D. C. Docket No. 06-02073-CV-T-24-TBM

ANDRZEJ MADURA,

Plaintiff,

ANNA DOLINSKA-MADURA,

Plaintiff-Appellant,

versus

COUNTRYWIDE HOME LOANS, INC.,
FULL SPECTRUM LENDING, INC.,

Defendants-Appellees.

_____

No. 08-14793
Non-Argument Calendar

_____

D. C. Docket No. 06-02073-CV-T-24TBM

ANDRZEJ MADURA,

Plaintiff-Appellant,

ANNA DOLINSKA-MADURA,

Plaintiff,

versus

COUNTRYWIDE HOME LOANS, INC.,
FULL SPECTRUM LENDING INC.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(August 17, 2009)

Before TJOFLAT and EDMONDSON,* Circuit Judges.

PER CURIAM:

_____

*This opinion is issued as a quorum as Judge Hull did not participate. See 28 U.S.C. §
46(d).

2

Andrzej Madura ("Mr. Madura") and his wife, Anna Dolinska-Madura ("Mrs. Madura"), filed a pro se complaint against Countrywide Home Loans, Inc. ("Countrywide") and Full Spectrum Lending, Inc. ("Full Spectrum"), alleging violations of Florida law and federal statutes governing consumer credit protection. This action arises out of a home loan the Maduras obtained from Full Spectrum that Full Spectrum then sold to Countrywide. In a nutshell, the Maduras claim that the defendants forged loan documents and fraudulently charged a prepayment penalty. Mr. Madura appeals pro se the district court's order dismissing his claims based on an arbitration agreement in the loan documents. Mrs. Madura appeals pro se the district court's order granting summary judgment to the defendants on her claims because, inter alia, she either already had or could have litigated them in an earlier Florida state court action. After review, we affirm.

## I. BACKGROUND FACTS

### A. Federal Complaint

According to the Maduras' complaint, in July 2000, Full Spectrum sent the Maduras loan documents, which they signed and sent back. On July 26, 2000, the Maduras and Full Spectrum closed the loan. Under the terms of the loan agreement, the Maduras borrowed $87,750 at an adjustable interest rate of 14.375

percent, secured by their principal residence.[1]

On July 31, 2000, Countrywide purchased the loan from Full Spectrum. In March 2001, the Maduras called Countrywide and requested to repay their loan in full. Countrywide informed them that a prepayment penalty applied and later sent them a payoff demand statement that included a $5,036.84 prepayment penalty.

The Maduras allege that the loan documents they signed did not include a prepayment penalty. According to the Maduras, Full Spectrum and Countrywide destroyed those documents, created fraudulent copies of certain documents, including a Truth In Lending Act ("TILA") disclosure statement and the adjustable rate note, and forged their signatures on these fraudulent documents. According to the Maduras, the forged documents contained conditions to which they never agreed, including a prepayment penalty.

In subsequent communications, the defendants refused to provide the Maduras with copies of the allegedly forged documents. The Maduras sent a notice to Countrywide demanding an immediate rescission of the loan agreement. The Maduras hired a forensic document examiner, who found that their signatures on the TILA disclosure statement and Mr. Madura's initials on the adjustable rate

---

[1]Although the federal complaint alleges that both Mr. and Mrs. Madura were borrowers, the defendants dispute this allegation. The defendants contend that only Mr. Madura signed the loan documents and that Mrs. Madura's signature appeared only on documents releasing her marital and homestead interest in the property.

note were forged. The Maduras sent this report to Countrywide. In July 2001, Countrywide refused to rescind the loan agreement, claiming that Mr. Madura's initials on the promissory note were not forged and that all disclosures had been provided. Nonetheless, Countrywide agreed to waive the prepayment penalty.

The Maduras also alleged that they had filed a complaint in the Manatee County Circuit Court in Florida ("the state court action") against Full Spectrum and Countrywide seeking rescission of the loan agreement. The Maduras attached to their federal complaint copies of: (1) their state court complaint, which raised state law claims of forgery, uttering a forged instrument, usury, conspiracy and racketeering; (2) an amended state court complaint, filed by Mrs. Madura, which alleged state law claims of fraud and fraud in the inducement and federal TILA claims; and (3) the forensic document examiner's report. According to the Maduras' federal complaint, the state court compelled Mr. Madura to arbitrate his claims.

The Maduras' federal complaint contained nineteen counts based on essentially the same facts as the state court action. In eleven counts, the Maduras sought rescission of the loan agreement and statutory damages for alleged TILA violations. In eight counts, the Maduras sought rescission and damages for state law claims of failure to contract, forgery, fraud, fraud in the inducement, usury,

uttering forged bills and violating the Florida Communications Fraud Act ("FCFA").

**B.      Motion to Dismiss and/or Compel Arbitration**

Countrywide and Full Spectrum moved to dismiss the federal complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. Alternatively, the defendants argued that the district court should order Mr. Madura to arbitrate his claims pursuant to the arbitration agreement in the loan documents.

Mr. Madura opposed arbitration, arguing that he was not bound by the arbitration agreement. Mr. Madura's argument hinged on the theory that there were two contracts. The "first contract" consisted of the loan documents he signed prior to and during the closing, and the "second contract" consisted of the documents with the prepayment penalty allegedly forged after the closing. Although somewhat difficult to follow, it appears Mr. Madura argued that the arbitration agreement he admittedly signed related to only the "first contract" and not the "second contract." Thus, according to Mr. Madura, he could not be forced to arbitrate his claims relating to this "second contract."

As to their Rooker-Feldman argument, the defendants submitted documents from the state court action indicating that the state court: (1) found that Mr.

Madura's claims were subject to the arbitration agreement; and (2) granted summary judgment to Countrywide and Full Spectrum on <u>Mrs.</u> Madura's claims. The state court found that: (1) Mrs. Madura's TILA claims were barred by the one-year statute of limitations in 15 U.S.C. § 1640(e); (2) Mrs. Madura was not a "borrower" under the loan agreement and, thus, did not have standing to bring a usury claim; and (3) Mrs. Madura could not show damages for her fraud claims because it was undisputed that the defendants had waived the prepayment penalty.[2]

In this federal action, a magistrate judge issued a report ("R&R") recommending that the district court deny the defendants' motion to dismiss for lack of subject matter jurisdiction, but grant the defendants' motion to compel Mr. Madura to arbitrate his claims. The R&R concluded that Mr. Madura was bound by the arbitration agreement, which he did not dispute he had signed, and that the arbitration agreement covered all of his claims. Over Mr. Madura's objections, the district court adopted the R&R, compelled Mr. Madura to arbitrate his claims, and dismissed his claims in favor of arbitration. In doing so, the district court rejected Mr. Madura's two-contract theory and found that all of Mr. Madura's claims arose out of the single loan transaction and were encompassed by the arbitration

_____

[2]The Florida Second District Court of Appeal affirmed the arbitration and summary judgment rulings. The United States Supreme Court denied Mr. Madura's subsequent petition for a writ of certiorari.

7

agreement.

**C. Motion for Leave to File Amended Complaints**

After the arbitration ruling, the Maduras moved for leave to amend their federal complaint to add claims relating to the "second contract," i.e., the allegedly forged documents, with Countrywide and Full Spectrum. As to Mr. Madura, the district court denied the motion as moot because he had been ordered to arbitrate his claims. As to Mrs. Madura, the district court denied the motion as futile. The district court reiterated that all of the Maduras' claims arose out of the same loan transaction and that their attempt to distinguish between a first and second contract was unpersuasive.

Thereafter, the Maduras moved again for leave to amend their federal complaint. They re-alleged portions of their original complaint and included these additional claims: (1) spoliation of evidence; (2) rescission of the arbitration agreement based on fraud in the inducement; (3) TILA violations regarding a courier charge; (4) a state RICO claim; (5) a violation of the FCFA; and (6) a claim that the defendants ruined their credit. As to Mr. Madura, the district court denied the motion because he was required to arbitrate his claims and had delayed in asserting his fraud claim.[3] As to Mrs. Madura, the district court denied the motion

---

[3]The district court noted that Mr. Madura was seeking to add this claim over seven years after he signed the arbitration agreement and after the scheduling order had been entered,

because, inter alia: (1) res judicata barred her claims based on the loan transaction; (2) her ruined credit and FCFA claims were futile; (3) applicable statutes of limitations barred her rescission and TILA claims; and (4) she unduly delayed in asserting her state RICO, uttering and punitive damages claims.

## D.    Motion for Summary Judgment

After Mr. Madura was compelled to arbitrate, Countrywide and Full Spectrum moved for summary judgment on all of Mrs. Madura's claims, arguing, inter alia, that she was relitigating the issues around the July 2000 loan transaction and that her claims were barred by issue and claim preclusion based on the state court action. The defendants alternatively argued that Mrs. Madura's claims were time-barred and moot and that she lacked standing.

The magistrate judge's R&R recommended granting the defendants' summary judgment motion. The R&R concluded that: (1) Mrs. Madura's claims were barred by issue and claim preclusion based on the state court's final judgment against her; and (2) alternatively, her TILA, fraud and usury claims were time-barred by applicable statutes of limitations and Florida's criminal-uttering statute did not provide a private right of action. The district court adopted the R&R over

discovery concluded, and the district court had ruled that Mr. Madura's claims had to be arbitrated pursuant to the arbitration agreement. The district court stated that it appeared Mr. Madura was "attempting to get around this Court's ruling by amending his complaint."

9

Mrs. Madura's objections and entered summary judgment in favor of the defendants. The Maduras filed this consolidated appeal.

## II. DISCUSSION

**A.     Motion to Compel Arbitration of Mr. Madura's Claims**

Under the Federal Arbitration Act ("FAA"), if one party to an arbitration agreement refuses to arbitrate, the aggrieved party may petition the district court to compel arbitration. 9 U.S.C. § 4. The district court will grant the petition "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." Id. However, the FAA prohibits enforcement of the arbitration agreement if it is invalid "upon such grounds as exist at law or in equity for the revocation of any contract." Id. § 2.[4]

Attached to the defendants' motion to compel arbitration was a copy of the arbitration agreement Mr. Madura signed on July 11, 2000, along with other loan documents.[5] The arbitration agreement provided that claims relating to the credit transaction (i.e., the home loan) would be resolved in arbitration with the National Arbitration Forum ("NAF").

The parties do not dispute that the July 2000 loan transaction is a transaction

---

[4]We review de novo a district court's decision to compel arbitration. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 n.6 (11th Cir. 2005).

[5]The defendants also attached a second copy of the arbitration agreement Mr. Madura signed on July 26, 2000, the date of the closing.

involving commerce under the FAA, the arbitration agreement is governed by the FAA and Mr. Madura's claims relating to the July 2000 loan transaction fall within the scope of the arbitration agreement.[6]  Instead, the parties dispute whether, pursuant to § 2 of the FAA, the district court should have declined to enforce the arbitration agreement because it is invalid.  Mr. Madura offers two grounds for finding the arbitration agreement unenforceable under § 2 of the FAA: (1) he was fraudulently induced to enter into the loan transaction; and (2) arbitration would be prohibitively expensive.

1.      Fraud in the Inducement

In interpreting § 2 of FAA, courts have drawn a distinction between "claims that challenge the contract generally and claims that challenge the arbitration provision itself."  Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 876 (11th Cir. 2005) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403, 87 S. Ct. 1801, 1806 (1967)).  Thus, while the district court may decide allegations of fraud in the inducement that pertain specifically to the arbitration agreement, claims of fraud in the inducement as to the contract as a whole must be resolved in arbitration.  Id. at 876-77.

---

[6]We reject Mr. Madura's argument that he asserted claims of uttering based on the defendants' submission of the allegedly forged loan documents in the Florida state courts and the U.S. Supreme Court that fall outside the arbitration agreement.  As the district court concluded, these claims are not in the Maduras' complaint.

11

Mr. Madura does not dispute that he signed the arbitration agreement. Although Mr. Madura claims that Full Spectrum forged his signature on the adjustable rate note and TILA disclosure statement, he does not contend that Full Spectrum forged his signature on the arbitration agreement. Cf. Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) (explaining that, when a party contends he did not sign or assent to an arbitration agreement, and thus challenges the very existence of such an agreement, the district court, before sending the claims to arbitration, "must first decide whether or not the non-signing party can nonetheless be bound by the contractual language").[7]

Instead, Mr. Madura raises a defense of fraudulent inducement. He claims that Full Spectrum tricked him into signing the loan documents, including the arbitration agreement, by providing him with loan documents that did not contain the prepayment penalty and, after closing, destroying those loan documents and replacing them with forged documents that contained the prepayment penalty.[8]

---

[7]Even if Mr. Madura had argued in response to the motion to compel arbitration that his signature on the arbitration agreement was forged, he could not prevail because he failed to provide any evidence to support such a claim. See Chastain, 957 F.2d at 854-55 (stating that "[a] party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists' and that in addition to "an unequivocal denial that the agreement had been made . . . some evidence should [be] produced to substantiate the denial" (quotation marks omitted)).

[8]Mr. Madura's appeal brief states that a Full Spectrum representative assured Mr. Madura over the phone and at the closing that the arbitration agreement pertained to the loan documents Mr. Madura signed. In support, the appeal brief cites to Mr. Madura's affidavit filed in the district court. However, Mr. Madura's affidavit does not contain this factual allegation.

Mr. Madura contends that because the defendants forged his signature on the adjustable rate note and TILA disclosure statement, the entire loan agreement, including the arbitration agreement, is void ab initio.

Mr. Madura's argument is a challenge "to the validity of the contract as a whole," and not specifically to the arbitration agreement. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 448-49, 126 S. Ct. 1204, 1210 (2006) (concluding that a claim that the entire contract is illegal and void ab initio under state law must be arbitrated); Prima Paint, 388 U.S. at 403-04, 87 S. Ct. at 1806 (concluding that a claim of fraud in the inducement of the entire contract must be arbitrated); Jenkins, 400 F.3d at 876-77 (concluding that a claim that the entire contract is an adhesion contract must be arbitrated). Thus, the district court did not err in ordering Mr. Madura to arbitrate his claims.

2.    Accessibility of Arbitral Forum

Mr. Madura argues that the arbitration agreement is unenforceable because he cannot afford to pay the arbitration fees and thus cannot vindicate his rights in arbitration. A party who seeks to invalidate an arbitration agreement on the basis that arbitration would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 90-92, 121 S. Ct. 513, 522-23 (2000); see also Anders v. Hometown

13

Mortgage Servs., Inc., 346 F.3d 1024, 1028 (11th Cir. 2003).

In Green Tree, the arbitration agreement was silent on the arbitrator's identity or costs. 531 U.S. at 90, 121 S. Ct. at 522. The party opposing arbitration submitted informational material from the American Arbitration Association that did not discuss fees and an article "contain[ing] a stray statement" that the average cost of arbitration was $700 per day. Id. at 90 n.6, 121 S. Ct. at 522 n.6. The Supreme Court concluded that this evidence was insufficient to show that the arbitration costs would preclude the litigant from effectively vindicating rights in arbitration. Id. at 90-91, 121 S. Ct. at 521-23. The Supreme Court explained that the mere risk of prohibitive costs "is too speculative to justify the invalidation of an arbitration agreement." Id. at 91, 121 S. Ct. at 522.

In Anders, this Court subsequently concluded that a plaintiff's affidavit outlining his financial condition was insufficient to meet his burden. 346 F.3d at 1028-29. This Court reasoned that the applicable rules of arbitration provided for deferred or reduced fees in cases of extreme hardship and the defendant's counsel stipulated that the defendant would bear the plaintiff's administrative costs of instituting arbitration. Id.

Here, the arbitration agreement contains a provision dividing costs in this manner: (1) "The party making demand upon the Administrator for arbitration

14

shall pay $125.00 to the Administrator when the demand is made"; (2) Full Spectrum "will pay the Administrator all other costs for the arbitration proceeding up to a maximum of one day (six hour) of hearings"; (3) "All costs of the arbitration proceeding that exceed one day of hearings will be paid by the non-prevailing party"; and (4) "Each party shall pay his/her own attorney, expert, and witness fees and expenses.  However, the arbitrator may, in his or her discretion, permit the prevailing party to recover fees and costs to the extent permitted by applicable law."

In addition, the arbitration agreement designates the NAF as the administrator of the arbitration and provides that the arbitration will be conducted in accordance with the NAF's Code of Procedure.  Under Rule 44 of the NAF's Code of Procedure, unless the parties agreed otherwise, all filing fees must be paid at the time a request or objection is filed and all hearing fees must be paid when the hearing is selected.  However, under Rule 446, a consumer "who asserts that arbitration fees prevent [him] from effectively vindicating [his] case in arbitration may, at the time of filing of [his] Initial Claim or [his] Response to a Large Claim and prior to paying any filing fee, file a Request that another Party or Parties pay all or part of the arbitration fees or that the arbitration provision be declared unenforceable, permitting [him] to litigate the case instead of arbitrating the case."

15

In addition, Rule 45 contains a fee waiver provision that allows a consumer to request a full or partial waiver of a particular fee if he submits an affidavit of poverty that shows he is unable to pay the fee.

Mr. Madura opposed arbitration, in part, because it would cost $3,100 to initiate arbitration and additional fees for each request or objection he filed. Mr. Madura submitted the NAF's fee schedule to the district court, which indicated that, for a claim involving $75,500 to $125,000, the filing fee was $300, the commencement fee was $300, the administrative fee was $1,000 and the participatory hearing session fee was $1,500. The fee schedule also listed fees per request or objection ranging from $75 to $750.[9] Based on the 87 motions and objections he said he had filed to date in the district court, Mr. Madura estimated that it would cost him approximately $20,000 to arbitrate his claims.[10]

Under the total circumstances of this case, we conclude that Mr. Madura did not meet his burden to show that he likely would incur prohibitively large

_____

[9]For example, the fee for a request for a subpoena is $75, for a request for a non-dispositive order is $250 and for a request for a dispositive or discovery order is $500. And, the fee for an objection to each of these requests is $100, $250 and $500, respectively.

[10]On appeal, Mr. Madura stresses that he was given in forma pauperis ("IFP") status in the district court when he originally filed his complaint. However, we note that the district court denied Mr. Madura's request to proceed IFP on appeal on the ground that he was no longer a pauper. And, after comparing Mr. Madura's assets and liabilities, this Court denied Mr. Madura's renewed request for IFP status on appeal, finding his allegations of poverty were untrue.

arbitration costs. First, pursuant to the arbitration agreement, Mr. Madura will have to pay only $125.00 to initiate the arbitration and then Full Spectrum will pay all costs up to the equivalent of six hours of hearings. Thus, under the arbitration agreement, Mr. Madura may not be responsible for all, or perhaps any, of his filing and hearing fees. Second, although the NAF's rules generally require the parties to pay as they go, they also provide for cost-shifting in cases of extreme hardship and for the full or partial waiver of fees if a consumer is unable to pay them. Mr. Madura has not shown that he would be denied either of these forms of relief. Third, Mr. Madura's estimated arbitration costs of $20,000 is purely speculative. Although Mr. Madura filed numerous motions and objections during the district court proceedings, many of them were unnecessary. In fact, the court cautioned him at least once about filing unnecessary motions.[11] Accordingly, Mr. Madura's arguments that the arbitration agreement is unenforceable are without merit, and the district court properly concluded that he should arbitrate his claims.

## B. Motion for Summary Judgment as to Mrs. Madura

Mrs. Madura argues that the district court erred in granting summary judgment to the defendants based on issue and claim preclusion as a result of her

---

[11]In a May 24, 2007 status conference, the magistrate judge expressed disapproval of Mr. Madura's "tit-for-tat motion practice" and advised him that not every motion filed by the defendants required him to respond with his own motion.

17

prior state court action.[12]

In considering whether to give preclusive effect to a state court judgment under claim preclusion (or res judicata) or issue preclusion (or collateral estoppel), we apply the law of the state whose court rendered the judgment. Agripost, Inc. v. Miami-Dade County, ex rel. Manager, 195 F.3d 1225, 1229 n.7 (11th Cir. 1999). Under Florida's doctrine of res judicata, "[a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain and defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action." Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001) (quotation marks and emphasis omitted). Claims are considered the "same cause of action" if the facts essential to the maintenance of both actions are the same, that is, if the evidence in both cases is in essence the same. See Gordon v. Gordon, 59 So. 2d 40, 44 (Fla. 1952); see also Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1503 (11th Cir. 1990) ("[I]f a case arises out of the same nucleus of

---

[12]We review "de novo a district court's grant of summary judgment, applying the same legal standards as the district court." Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000). A district court shall grant summary judgment when the evidence before it shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review de novo a district court's determination of res judicata. Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999).

operative fact, or is based upon the same factual predicate, as a former action, the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." (quotation marks omitted)).

Florida's doctrine of collateral estoppel bars "identical parties from relitigating issues that have previously been decided between them." Mobil Oil Corp. v. Shevin, 354 So. 2d 372, 374 (Fla. 1977). "The essential elements of the doctrine are that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction." Id. Collateral estoppel is distinct from res judicata in that it applies when the two causes of action are different and estops the parties from litigating in the second suit only the points and questions common to both causes of action. Gordon, 59 So. 2d at 44.

Here, Mrs. Madura's action in the state court: (1) resulted in a final judgment on the merits; (2) by a court of competent jurisdiction: and (3) was between the same parties as this federal action. Mrs. Madura's federal action raises essentially the same usury, fraud and TILA claims as her state court action. The state court concluded that Mrs. Madura's TILA claims were time-barred, that she did not have standing to bring her usury claim because she was not a "borrower" and that her fraud claims should be dismissed because she could not prove

19

damages given that the prepayment penalty had been waived.[13]  Thus, the state court's judgment precluded Mrs. Madura's federal court claims of usury, fraud and TILA violations.

To the extent Mrs. Madura raises slight variations of fraud, usury and TILA violations, she could have, but did not, raise these issues in the state court litigation.  These claims involved the "same cause of action," that is, the same essential facts underpinning the state court claims, namely the fraud and forgery during the July 2000 loan transaction.  Thus, these claims are also barred by the doctrine of res judicata.[14]  Because preclusion principles bar all of Mrs. Madura's claims, the district court did not err in granting the defendants' summary judgment motion.[15]

---

[13]We reject Mrs. Madura's claim that the state court's dismissal of her usury claims for lack of standing is not a judgment on the merits for res judicata purposes.  See Wager v. City of Green Cove Springs, 261 So. 2d 827, 829 (Fla. 1972) (concluding that dismissal for lack of standing was res judicata in subsequent action on issue of standing).

[14]Mrs. Madura's federal complaint also asserted an FCFA claim, a claim she did not assert in her state court complaint.  However, the FCFA is a criminal statute, see Fla. Stat. § 817.034, and Mrs. Madura cites no authority indicating that the FCFA provides for a private right of action.  Nonetheless, we agree with the district court that, even if such a private right of action exists, she is precluded from raising an FCFA claim in the federal action because it is based on her allegations of fraud in executing the July 2000 loan transaction and should have been raised in her state court action.

[15]Because we affirm the district court's conclusion that the doctrines of collateral estoppel and res judicata barred Mrs. Madura's claims, we do not address its alternative holding that Mrs. Madura's usury, fraud and TILA claims were time-barred and that Mrs. Madura did not have a private right of action under Florida's criminal-uttering statute.

20

## C.     Motions to Amend Complaint

The Maduras appeal the district court's denial of their first and second motions to amend the complaint.[16]  The district court found, and we agree, that the Maduras' arguments distinguishing between a "first" signed contract and "second" forged contract are without merit.  The claims the Maduras sought to add arose out of the same July 2000 loan transaction.  As such, Mr. Madura was required to arbitrate those claims.  And, Mrs. Madura was barred by preclusion principles from bringing those claims in federal court.

## III.  CONCLUSION

In sum, the district court did not err in compelling Mr. Madura to arbitrate his claims against the defendants.  The district court also did not err in granting summary judgment to the defendants on Mrs. Madura's claims or in denying her two motions to amend her complaint.

**AFFIRMED.**

---

[16]Ordinarily, we review a district court's denial of a motion to amend a complaint for abuse of discretion.  Freeman v. First Union Nat'l, 329 F.3d 1231, 1234 (11th Cir. 2003).  However, when the basis for the denial is futility, we review de novo because the district court has concluded as a matter of law that the amendment would fail.  Id.