MAKAR, J.
Wells Fargo Bank, N.A., appeals the dismissal with prejudice of its initial complaint seeking to foreclose the mortgage on property owned by William and Gail Bo-hatka. The bank claims the trial court erred by going beyond the four corners of its complaint. We agree and hold that, although dismissal of the initial complaint was proper, dismissal with prejudice was not. We further hold that the trial court’s sua sponte physical examination of the original of the promissory note at issue was improper and precluded the orderly process by which contested facts are adjudicated. We reverse.
I.
In its initial complaint, the bank alleged that it was “the owner and holder of all real and beneficial interests in the subject Promissory Note and Mortgage ... by virtue of an unconditional equitable transfer to [the bank] of all real and beneficial interests in the subject Promissory Note and Mortgage which occurred prior to the commencement of this action.” The bank attached a copy of the note, which identified “Option One Mortgage Corporation” (Option One) as the lender, and a copy of the mortgage, which also identified Option One as the lender.
At this point, the allegations in the initial complaint and its attachments created an inconsistency as to who was the true owner of the note: the bank or Option One? For this reason, the Bohatkas moved to dismiss the complaint, asserting the bank lacked standing to sue them on the note.
At the hearing on the motion to dismiss,[1] counsel for the bank provided the trial court with a photocopy of an “Allonge to Note,” which specially endorsed the note to the bank. The bank argued that the allonge established its standing to pursue payment on the note because the bank was specifically identified in it; under the *598 heading “Pay to the order of’ was “Wells Fargo Bank, N.A., as Trustee.”
We pause to note that an “allonge” is a legal term of art of French origin[2] but of recent vintage, at least in Florida’s case-law. In Florida, the term first appears in this Court’s decision in Booker v. Sarasota, Inc., which points to its dictionary definition as “a piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself. Such must be so firmly affixed thereto as to become a part thereof.” 707 So.2d 886, 887 n. * (Fla. 1st DCA 1998) (quoting Black’s Law Dictionary 76 (6th ed. 1990)).[3] In essence, an allonge is simply an elegant-sounding legal term for a supplemental attachment to a note in which endorsements to subsequent note holders may be identified. A body of caselaw has developed, primarily in other states and under the UCC, regarding the validity of an al-longe and how it must be “affixed” to a note.[4] The allonge may, as is claimed here, name the payee or it may be open ended (indorsed in blank) without naming a payee.[5]
The bank’s counsel explained that the original allonge had been sent to the clerk’s office, which had not yet received it. The Bohatkas’ counsel objected to consideration of the allonge, in part, because it was “outside the record” for purposes of a motion to dismiss and that he had no opportunity to rebut it on such short notice. Nonetheless, at the urging of the Bohatkas’ trial counsel, the trial court under took a physical examination of the original note (which was in the court file), which is reflected in the statement of evidence:
*599 [Whereupon, the judge took the original note out of the court file, swiveled the chair to face the window, and held each page up to the daylight for physical examination]
[[Image here]]
[Trial counsel]: [Observing the physical examination] We ask the Court to examine each page for signs of a document being affixed to it previously by glue, tape, pins, staples, paperclips, or any thing [sic] else, and to look for an endorsement on front or back of any page of the note.
[Whereupon the Court examined each page of the original note, front and back, by holding it up to the daylight, ran her fingers over the corners and along each side and bottom, smelling the pages for traces of glue, looking for indentations, staple holes, paperclip indentations, tap marks, pin holes and similar. The hearing was paused for 1-2 minutes during this process and the attorneys remained silent until the Court put down the third page and [trial counsel] resumed his chair.]
Based upon its inspection, the trial court found no indicia that an attachment to the original note had been made and therefore granted dismissal of the bank’s complaint with prejudice. It stated:
This is my ruling; Motion to Dismiss granted. Nothing was attached. There is no endorsement. There is no allonge, and there cannot be any allonge affixed before filing, so dismissal is with prejudice. I also suspect that this document [the allonge] was created to defeat the defendants’ motion. I want to preserve the originals by a separate order .... please draft a separate order that the original documents will remain in the court file and will not be removed without my authorization by anyone. I reserve the right to send them to the attorney general for investigation of this activity by plaintiff and its counsel.[6]
The court also granted attorneys’ fees to the Bohatkas (based on language in the mortgage) and reserved jurisdiction as to the amount; additionally, it expressed that because “fraud may have been perpetrated upon this Court” it “reserved the ability to file a formal complaint with the Attorney General.”
The bank sought to undo the trial judge’s ruling by moving to vacate and set aside the dismissal. It argued that even if its initial complaint did not adequately allege the bank’s standing, dismissal with prejudice was inappropriate because the complaint could be amended to do so. As additional support for its motion, the bank filed a “Supplement in Support,” which contained four exhibits: an affidavit of ownership, dated April 25, 2011, stating “[the bank] is the owner and holder” and “[the bank] currently has the original promissory note”; a pooling and servicing agreement dated in 2005 listing it as trustee; a schedule of that pooling and service agreement listing the loan at issue within that pool; and a modification agreement between the bank and the Bohatkas. The Bohatkas responded by presenting a document that purported to show that Option One was a “suspended” entity and could not have issued the allonge subsequent to its suspension. They also maintained that the allonge was not as “firmly affixed” to the note as the law required.
*600 At the hearing on its motion, the bank argued that its initial complaint — even if deficient — could be cured, pointing to the allonge and its supplemental evidence of ownership of the note. In response, the Bohatkas maintained that amendment would be futile. The trial court denied the bank’s request to vacate and set aside the dismissal, stating in its order that it “exer-cis[ed] its right to file a formal complaint with the Office of Attorney General.” The bank appeals from the trial court’s subsequent issuance of a final judgment.
II.
Two issues are presented. The first is whether the trial court erred in dismissing the bank’s initial complaint with prejudice for lack of standing. The second is whether it erred in undertaking a judicial examination of the original promissory note in the court file. Both are interrelated.
A.
It is a bedrock principle that a trial court’s review of a motion to dismiss is limited to the four corners of the challenged complaint. As this Court noted long ago, “a court may not properly go beyond the four corners of the allegations of the complaint when considering a motion to dismiss it.” Thomas v. Rollins, 298 So.2d 186, 187 (Fla. 1st DCA 1974) (Boyer, J.). In doing so, we noted that “one of the most important principles for a court to keep in mind” is to confine its review strictly to the “allegations of fact contained in the complaint” and to not “speculate as to what the true facts may be or what facts will be ultimately proved in the trial of the cause.” Id. (quoting Thompson v. City of Jacksonville, 130 So.2d 105, 107 (Fla. 1st DCA 1961)). While a court may examine the allegations in the “complaint and any attached documents incorporated therein,” the “question of the sufficiency of the evidence which the plaintiff will likely be able to produce in a hearing on the merits, is wholly irrelevant and immaterial in reaching such a determination.” Id. at 187-88 (quoting Hopke v. O’Byrne, 148 So.2d 755, 755 (Fla. 1st DCA 1963)). As in Thomas, which involved a mortgage dispute, these principles continue to apply in the modern day world of mortgage foreclosure litigation. See, e.g., U.S. Bank Nat'l Ass’n v. Knight, 90 So.3d 824 (Fla. 4th DCA 2012) (reversing dismissal with prejudice of mortgage foreclosure complaint); WM Specialty Mortg., LLC v. Salomon, 874 So.2d 680, 682-83 (Fla. 4th DCA 2004) (reversing grant of dismissal upon necessity of hearing on allegations of equitable transfer).
In this case, we do not fault the trial judge for dismissing the bank’s initial complaint, which facially created a contradiction between who the bank alleged was the owner of the note (the bank) and whom the attached note and mortgage identified as the owner (Option One). Putting aside (for the moment) the parties’ attempts to interject or examine materials outside the pleadings, dismissal without prejudice was appropriate simply to allow the bank an opportunity to amend its initial complaint to address this discrepancy and to fortify its allegations and attachments (perhaps with the allonge and some of the items the bank presented in support of its motion to vacate and set aside).
Dismissal with prejudice, however, was improper. Though the tone of the trial judge’s order made it sound as if dismissal was a sanction, it explicitly said it was not doing so on that basis. Had it done so, it would have been an abuse of discretion due to the lack of evidence to support such a sanction. See Deutsche Bank Nat’l Trust Co. v. Lippi, 78 So.3d 81, 85 (Fla. 5th DCA 2012) (“If a trial court dismisses a case with prejudice without evidence of *601 extensive prejudice to the other side or proof that the party willfully failed to comply with court orders, it is considered an abuse of discretion.”).
Instead, the ostensible basis for dismissal with prejudice was that the initial complaint could not be amended to state a claim for which the bank had standing, a determination we review de novo. See Magnum Capital, LLC v. Carter. Assoc., LLC, 905 So.2d 220, 221 (Fla. 1st DCA 2005) (“We review de novo a trial court’s final disposition on a motion to dismiss for failure to state a cause of action.”). As a general matter, trial courts are to give plaintiffs “an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action.” See Kairalla v. John D. Catherine T. MacArthur Found., 534 So.2d 774, 775 (Fla. 4th DCA 1988). And the failure to attach necessary documents is a remediable offense. See Wells Fargo Bank, N.A. v. Reeves, 92 So.3d 249, 258 (Fla. 1st DCA 2012).
We know of no appellate case affirming a dismissal of an initial complaint with prejudice under like circumstances; it would be a rare bird in the judicial aviary. The trial court had before it the documents upon which the bank would likely rely for an amended complaint: the al-longe, the affidavit of ownership, the pooling/servicing agreement and its schedule, and the bank’s modification agreement with the Bohatkas. Liberality in amendment to the bank’s initial complaint was plainly required.
Recent mortgage foreclosure litigation at the motion to dismiss stage has uniformly resulted in appellate courts reversing dismissals of complaints with prejudice. See, e.g., Knight, 90 So.3d 824; Lippi, 78 So.3d at 85. We make this observation not to foreclose the possibility that amendment to a foreclosure complaint might be- futile and dismissal with prejudice appropriate in some cases but to emphasize the restraint and circumspection required at the early stages of the pleadings. Mortgage foreclosure cases have many factual permutations— such as the many ways that ownership of notes can be established — that do not lead to simplistic judicial resolution at the frontend of litigation.
An example of this point is U.S. Bank National Association v. Knight, in which the bank initially filed “a two-count complaint to foreclose on the note and mortgage and to reestablish said note.” 90 So.3d at 825. The bank “alleged it was the owner and holder of the mortgage and note” but “did not attach the note to its initial complaint. [The bank] then filed its first amended complaint, but again, did not attach the subject note.” Id. After the trial court denied its motion to dismiss, the property owner answered and affirmatively defended that the bank lacked standing to sue on the note. Id. In response, the bank filed a second amended complaint, this time “attaching a copy of the note at issue” that was “indorsed in blank.” Id. The bank “then filed its third amended complaint, which alleged that it ‘is the legal and equitable owner and holder of the note and mortgage and has the right to enforce the loan documents.’” Id. The bank attached two assignments to the third amended complaint. The property owner again moved to dismiss; the bank responded by saying its legal standing was not based “on the assignments, but rather on an equitable assignment of the note and that said assignments merely memorialized the prior equitable assignment of the note.” Id. The trial court ultimately dismissed the bank’s third amended complaint “with prejudice because the exhibits attached to the complaint” operated to ne *602 gate the bank’s claim of standing. On appeal, the Fourth District reversed, finding that the allegations in the “four corners” of the third amended complaint must be assumed true and stated a claim for relief. Id. at 826.
The point of our discussion of the twists and turns of the amended complaints in Knight is that a first complaint in a foreclosure action is often a starting point— not an ending point. A number of amendments may be necessary, which often serves to fine tune the scope of the factual allegations. Trial courts should not speculate on whether the bank might ultimately be able to prove its case on the merits or to adjudicate factual disputes prematurely. Lippi, 78 So.3d at 84 (trial court may not “rely upon depositions, affidavits, or other forms of evidence or speculation as to whether the allegations in the complaint ‘will ultimately be provable’ ”) (citation omitted). Here, the trial court jumped the gun by failing to allow the bank to amend its initial complaint, and this error requires reversal.
B.
We also note that the trial court engaged in the somewhat unusual step of physically examining the original note filed with the court as part of its decision to dismiss the bank’s complaint with prejudice. While a court is permitted to consider the content of an attachment to a challenged complaint, it cannot be said that the type of physical examination conducted here, which resulted in the spontaneous adjudication of disputed facts based on that examination, is permissible. In doing so, the trial court went beyond the boundaries of the limited inquiry that is appropriate at the motion to dismiss stage.
In reaching this conclusion, we make three points. First, the ordinary means by which the authenticity, relevancy, and admissibility of documents is determined is the structured approach laid out in the Florida Evidence Code. This process includes lay testimony as well as expert analysis where evidence is of a technical nature. See §§ 90.701-.702, Fla. Stat. And it generally becomes a question for the fact finder to make the determination of whose evidence to believe.
Here, this entire process was by-passed. At the hearing on the motion to dismiss, the trial court — albeit at the urging of the Bohatkas’ attorney — decided it would determine whether the original note had any physical indicia that it may have had an attachment, such as the allonge, affixed in the past. It perhaps was human nature to do so. Whatever can be said of the inspection, however, it was not the court’s job to do; it was certainly not proper to adjudicate with finality the viability of the bank’s initial complaint in foreclosure on the basis of this spontaneous judicial examination. The conclusion that no allonge could have existed and been “affixed before filing” of the bank’s complaint was a misstep that is inconsistent with due process and contributed to the erroneous dismissal order.
Second, the ways to allege standing to foreclose on a note are many and often very complex,[7] making it important that a complaint’s allegations clearly mark the chosen path(s).[8] Here, the bank’s initial *603 complaint and attachments were internally contradictory and failed to mention or include a copy of the allonge. Justifiably, the Bohatkas sought to have a clearer picture of the grounds for the bank’s standing because the complaint and attachments were “confusing” and “ambiguous” as to the bank’s standing “to file and pursue this foreclosure.” They laudably sought a more definite statement of the bank’s allegations, but only as a fallback if their motion to dismiss was denied. At this initial stage of litigation, particularly where it is abundantly clear that amendment is possible, amendment should be freely granted to clarify a plaintiffs claim of standing-versus summarily adjudicating it with finality. See Fla. R. Civ. P. 1.190 (favoring liberal amendment); Wells Fargo Bank, N.A. v. Reeves, 92 So.3d 249, 253 (Fla. 1st DCA 2012).
In this regard, recent Florida foreclosure cases make clear that amendment generally should be permitted (within reason) to establish the bank’s standing. For instance, in Isaac v. Deutsche Bank National Trust Company, the Fourth District upheld the grant of summary judgment to a bank which established its standing based on documentation similar to that at issue in this case. 74 So.3d at 495-96. The property owners claimed the bank “failed to provide sufficient documentation reflecting how it obtained ownership of the mortgage and note from the original as-signee, an entity called Option One.” Id. at 495. The bank filed the “original mortgage, note, and an allonge from Option One, payable to bearer” along with the affidavit. Id. at 495-96. Unlike this case, the allonge in Isaac did not state that the bank was the payee, which made the note “payable to bearer” Id. at 496; see § 673.1091(2), Fla. Stat. (“If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.”). Because the property owners were unable to rebut any of the documentary evidence of the bank’s standing to foreclose, summary judgment for the bank was affirmed.
We note that the allure of the allonge hung over the hearing on the Bohatkas’ motion. That the original had not yet arrived, and only a copy was available, was a point of drama; yet it mattered not. What mattered was that a purported addendum to the note, the allonge, existed that had not yet been attached to the initial complaint; on the face of this al-longe, the bank was specifically named as the payee. Given this posture of the case, dismissal of the initial complaint without prejudice, or perhaps just an order requiring a more definite statement of the bank’s standing, was warranted to flesh out whether the foreclosure action would move forward based on the alleged endorsement of the note to the bank as reflected in the proferred allonge.
Finally, we do not suggest that it was improper for the court and the parties to address in a critical way how the bank was to establish its basis for standing to foreclose on the note at issue. Given the potential for fraud in post-dating addenda and other purported documents of transfer, it is laudable for courts and others to be sensitive to potential abuses. On the record before us, however, we see nothing — particularly at this initial stage of this litigation — that would justify the trial court’s reaction in commandeering the originals of the mortgage and the allonge for delivery to the Office of the Attorney General for its review.
*604 III.
A motion to dismiss is not a substitute for a summary judgment hearing or a trial. Dykema v. Godfrey, 467 So.2d 824, 825 (Fla. 1st DCA 1985). Because, the trial court erred in dismissing the bank’s initial complaint with prejudice, we REVERSE.
BENTON, C.J., and VAN NORTWICK, J., concur.

. Because no court reporter was present, the parties subsequently created a hearing transcript via a "statement of the evidence” that the trial court approved.

. It derives from the French word for lengthening or drawing out. The New Shorter Oxford English Dictionary 57 (Oxford 1993).

. Other courts have cited this definition. See Isaac v. Deutsche Bank Nat'l Trust Co., 74 So.3d 495, 496 n. 1 (Fla. 4th DCA 2011). The Court in Booker also noted that “Florida's Uniform Commercial Code does not specifically mention an allonge, but notes that '[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is part of the instrument.' " 707 So.2d at 887 n. * (citing § 673.2041(1), Fla. Stat. (1995)); see generally Richard A. Martin, Proving Standing to Foreclose a Florida Mortgage, 85 Fla. B.J. 31, 31 (Dec. 2011) ("When a note is conveyed on the secondary market, it is often indorsed, usually by a stamp or by affixing a separate document called an allonge to the note, which bears the signature of the assignor and the identity of the assignee.”).

. See, e.g., Douglas J. Whaley, Mortgage Foreclosures, Promissoiy Notes, the Uniform Commercial Code, 39 W. St. U.L. Rev. 313, 318-19 (2012) (noting the "many new cases" that deal with allonges and the meaning of "affixed”). Professor Whaley continues, “It is not enough that there is a separate piece of paper which documents the transfer unless that piece of paper is “affixed” to the note. What does "affixed” mean? The common law required gluing. Would a paper clip do the trick? A staple?” Id. at 319 (footnotes omitted). To our knowledge, no Florida court has explored what type of affixation or annexation of an allonge is legally sufficient, nor has any court addressed the possibility of electronic attachment of allonges. See Patricia Brumfield Fry, James A. Newell, & Michael R. Gordon, Coming To A Screen Near You — “Emortgages"—Starring Good Laws And Prudent Standards — Rated "XML", 62 Bus. Law. 295, 311 (Nov. 2006) (noting that Freddie Mac addressed the possibility "that an electronic allonge be added to all eNotes that contains language addressing both the recourse and transfer warranty issues”).

.See Martin, supra note 3, at 31 ("When the assignee is specifically identified, the indorsement is called a special indorsement, and the note becomes payable to the indorsee. A note may also be assigned by a separate written assignment. Notes may also be indorsed in blank, without identifying the transferee, making them payable to bearer and negotiable by transfer of possession.") (footnotes omitted).

. The trial court also told counsel for the bank "If your law firm or Wells Fargo created this document in an attempt to defeat the defendant’s motion, I will hold the plaintiff and the law firm responsible. They left you out to hang by sending you in here as local counsel. I want them present at all future hearings to hold them accountable for this.”

. See generally Matthew D. Weidner & Michael Fuino, Foreclosing in a Hurricane: Florida Courts Struggle to Deal With a Crisis of Epic Proportions, 41 Stetson L. Rev. 679, 681 (2012) (examining the intricacies of "diverging appellate opinions, particularly in the area of standing and real party in interest”).

. See generally Martin, supra note 3 at 34 ("With securitized mortgages, careful presuit attention to, and review of, the loan documents and chain of title of the note, and, when necessary, the proper execution and/or recording of any missing assignments or in-dorsements, will provide lender’s counsel *603 with sufficient supporting evidence to establish standing in a verified complaint, and thus avoid many standing defenses.”).