[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13953
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cv-02511-VMC-TBM


ANDRZEJ MADURA,
ANNA DOLINSKA-MADURA,

Plaintiffs-Counter Defendants-
Counter Claimants-Appellants,

versus

BAC HOME LOANS SERVICING, LP,
f.k.a.Countrywide Home Loans Servicing, LP,

Defendant,

BANK OF AMERICA, NA,

Defendant-Counter Claimant-
Third Party Plaintiff-
Counter Defendant-Appellee,

COUNTRYWIDE HOME LOANS INC.,

Counter Defendant,

UNKNOWN TENANT 2, et al.,

Third Party Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 10, 2014)

Before WILSON, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Andrzej Madura and his wife, Anna Dolinska-Madura, appeal pro se the district judge's granting summary judgment to Bank of America, N.A. ("BOA"). We affirm.

## I. BACKGROUND

A. Underlying Facts

On July 26, 2000, Madura obtained a residential home loan from Full Spectrum Lending, Inc. ("Full Spectrum"). Under the terms of the loan agreement, Madura borrowed $87,750.00 at an adjustable interest rate of 14.375%, secured by the Maduras' principal residence. Madura signed an arbitration agreement at the loan closing, and both he and his wife signed the mortgage. On July 31, 2000, Countrywide Home Loans, Inc. ("Countrywide"), purchased the loan from Full Spectrum.

In March 2001, the Maduras contacted Countrywide and requested to repay their loan in full. Countrywide informed them that a prepayment penalty applied and sent them a payoff demand statement that included a $5,036.84 prepayment penalty.  The Maduras sent Countrywide a letter on May 23, 2001, demanding an immediate rescission of the loan agreement because of alleged fraud and forgery. They asserted Full Spectrum and/or Countrywide had destroyed the original loan documents and had fabricated a new promissory note and Truth in Lending Act ("TILA") Disclosure Statement, which included a prepayment-penalty provision not present in the original loan documents.  The Maduras contended Full Spectrum and Countrywide had forged their initials and signatures on the fabricated documents.  Countrywide refused to rescind the loan agreement, but did agree to waive the prepayment penalty.

Despite the waiver of the penalty, the Maduras did not repay the loan in full. They continued to make their monthly loan payments, until November 1, 2006, when Madura ceased making payments.  Countrywide sent Madura a notice of default and acceleration on April 23, 2007.

Effective April 27, 2009, Countrywide changed its name to BAC Home Loans Servicing, L.P. ("BAC Home Loans").  On July 1, 2011, BAC Home Loans merged with BOA.  BOA notified Madura when the ownership and servicer rights of the loan were transferred from BAC Home Loans to BOA.  In February 2012,

3

BOA sent Madura a re-notice of default and acceleration.  Madura did not cure the default.

B. Litigation History

1. *Madura 1*

After the Maduras sent Countrywide the May 23, 2001, letter demanding rescission of their July 26, 2000, loan, they initiated multiple lawsuits in both state and federal courts.  In 2002, the Maduras filed a Florida court action, "*Madura 1*," against Full Spectrum and Countrywide in the Manatee County Circuit Court, Case No. 2002 CA 2358.  Based in part on the Maduras' contentions that Full Spectrum and Countrywide fraudulently had altered and forged their loan documents, they raised state-law claims of forgery, uttering a forged instrument, conspiracy, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.  They also raised state law claims of usury and argued their interest rate was unreasonable.

Full Spectrum and Countrywide moved to compel arbitration against Madura.  The state judge granted the motion, finding Madura had signed an enforceable arbitration agreement encompassing all of his claims.  The judge further found, even if Madura's usury claim was not appropriate for arbitration, the claim was not colorable as a matter of law.  Thereafter, his wife filed in the same case an amended state-court complaint, alleging federal TILA claims and state-law

4

claims of fraud and fraud in the inducement.  In Counts I and II, she alleged the defendants had violated TILA by impermissibly adding a prepayment penalty to TILA Disclosure and by forging the Maduras' signatures on loan documents, before entering the documents on the public record.  In Counts III and IV, Dolinska-Madura raised civil and criminal usury claims under Florida law.  In Count V, she alleged the defendants fraudulently had induced her to take the loan.  In Count VI, she alleged fraud on the basis that the defendants had charged a prepayment penalty to which the Maduras had never agreed at closing.

The defendants moved for summary judgment.  The state-court judge granted the motion and found the alleged TILA violations were time-barred.  On Counts III and IV, the judge found Dolinska-Madura was not a "borrower" and thus lacked standing to bring usury claims.  On Counts V and VI, the judge found the defendants had waived the prepayment penalty; consequently, Dolinska-Madura could not demonstrate damages, an essential element of a claim of fraud.  Dolinska-Madura petitioned the Supreme Court of Florida, which declined to review her case.  *Dolinska-Madura v. Full Spectrum Lending, Inc.*, No. SC06-1908 (Fla. Oct. 17, 2006).

2. *Madura 2*

On November 6, 2006, the Maduras filed a second lawsuit, "*Madura 2,*" in federal court.  They sought rescission of the January 26, 2000, loan and statutory

5

damages for alleged violations of the TILA. They alleged Countrywide had failed to honor their May 23, 2001, demand to rescind the loan based on illegally altered and forged loan documents. They also raised state-law claims for failure of contract, forgery, fraud, fraud in the inducement, usury, uttering forged bills, and violations of the Florida Communications Fraud Act ("FCFA").

Pursuant to his arbitration agreement, the district judge ordered Madura to arbitrate his claims and dismissed them to be arbitrated. The judge concluded Dolinska-Madura's claims were precluded by the doctrines of collateral estoppel or res judicata, because she already had raised those claims or should have raised them in *Madura 1*. The district judge found the Florida court was a court of competent jurisdiction, the state-court judge had entered a final judgment on the merits against Dolinska-Madura, the parties in the state and federal-court actions were identical, and all of Dolinska-Madura's state and federal claims arose out of the same operative nucleus of facts surrounding the July 26, 2000, loan. The district judge granted summary judgment to Full Spectrum and Countrywide on Dolinska-Madura's claims. We affirmed on appeal. *Madura v. Countrywide Home Loans, Inc.*, 344 F. App'x 509, 511 (11th Cir. 2009) (per curiam).

3. *Madura 3*

In 2010, the Maduras filed their third lawsuit, "*Madura 3*," in Florida court against BOA. BOA removed the action to federal court. In an amended

6

complaint, the Maduras requested a declaratory judgment, stating they were not liable for any payments on their loan, since their May 23, 2001, letter had rescinded the loan, because of Countrywide's nondisclosure of forged loan documents. The Maduras also raised claims of forgery, fraudulent notarization, FCFA violations, intentional spoliation of loan instruments, intentionally sending derogatory and inaccurate reports to credit bureaus, utterance of forged instruments, unauthorized payment of property taxes, and RICO violations.

BOA moved to dismiss the amended complaint, which the district judge granted on July 16, 2010. The judge found the complaint had not directed a single allegation against BOA. Although the Maduras had sued BOA as the parent company of Countryside, the judge found BOA was not Countrywide's parent company, and even if it was, a parent company generally is not liable for the acts of its subsidiaries. The judge concluded that res judicata barred the action, because each and every claim in the action had been addressed and finally adjudicated in *Madura 1* and *2*. The Maduras appealed, but we later dismissed the appeal for the Maduras' failure to prosecute. *Madura v. Bank of America, N.A.*, No. 10-14717 (11th Cir. May 27, 2011).

4. *Madura 4 and Madura 6*

The Maduras filed three additional lawsuits in 2011 and 2012. In October 2011, they filed "*Madura 4*" in a Florida small-claims court against the attorneys,

7

who had represented them in *Madura 1*, *2*, and *3*.  Shortly thereafter, they filed the action at issue in this appeal,"*Madura 5*."  In January 2012, they filed "*Madura 6*" in small-claims court against Countrywide.  The small-claims court dismissed *Madura 4* and *6*, because it lacked jurisdiction and the Maduras' claims, all of which stemmed from their July 2000 loan and had been adjudicated in *Madura 1* and *3*.

## C. *Madura 5*

Following removal from state court, on November 4, 2011, the Maduras filed an amended complaint in federal court against BOA and BAC Home Loans, alleging violations of the Real Estate settlement Procedures Act ("RESPA"), 12 U.S.C. § 205(b), (c), and (e).  The Maduras alleged BOA and BAC Home Loans had violated § 2605(b) and (c) of RESPA by failing to notify them that, on April 27, 2009, Countrywide had transferred the servicing of their loan to BAC Home Loans.  They also alleged the defendants had violated § 2605(e) by failing to respond to numerous Qualified Written Requests ("QWRs"), as defined by RESPA, within the requisite time periods.  In support, the Maduras attached numerous letters, which they contended constituted QWRs under RESPA.  They requested actual damages in an amount to be determined by a jury, statutory damages for each plaintiff in the amount of $2,000 per violation, and attorney's fees and costs.

BOA, on its own and as successor by merger to BAC Home Loans, answered the complaint and subsequently filed a counterclaim for foreclosure against the Maduras.[1]  BOA alleged the Maduras had not paid the required monthly installment payments on the July 26, 2000, loan from November 1, 2006, to the present.  As a result, the Maduras owed BOA $86,643.46.  BOA asserted all conditions precedent to the acceleration of the debt and commencement of the action had been fulfilled or waived, and it held the note and held the note immediately before it had filed the foreclosure action.

The Maduras filed a 140-page answer to BOA's counterclaim for foreclosure, denying the allegations and raising 71 affirmative defenses.  They asserted BOA lacked standing to foreclose, because the note was not a negotiable instrument, BOA was not a holder or a holder in due course of the note, the allonge[2] to the note was fraudulent and was not affixed to the note, they had rescinded the loan in May 2001, and the loan documents had been forged and fraudulently altered.

---

[1] BOA also filed a third-party complaint against additional parties, but no party has appealed the district judge's resolution of those claims.

[2] Under Florida law, an "allonge" is a legal term for "a piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself." *Wells Fargo Bank, N.A. v. Bohatka*, 112 So. 3d 596, 598 (Fla. 1st Dist. Ct. App. 2013) (citation and internal quotation marks omitted).  An allonge may name the payee or may be endorsed in blank. *Id.*

Following discovery, BOA moved for summary judgment on the Maduras' RESPA claims and on its counterclaim for foreclosure.  The Maduras responded in opposition and simultaneously filed their own motion for partial summary judgment on the foreclosure counterclaim, arguing again that BOA lacked standing to foreclose.  In support of their motion for partial summary judgment, they attached numerous "Forensic Document Examination Reports" from Thomas Vastrick, a purported expert in forgery and document alteration.  In the reports, Vastrick stated Madura's initials on the promissory note and both his and his wife's signatures on the TILA Disclosure appeared to have been forged.  Vastrick also recommended additional testing be performed on the allonge to determine whether the endorsements therein were genuine.

BOA subsequently moved to strike the forensic document examination reports and argued they were inadequate under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), for the admission of expert testimony.  The Maduras responded in opposition and requested a *Daubert* hearing to resolve the matter.

Meanwhile, the district judge ordered BOA to tender the original, signed loan documents to chambers.  BOA complied.  On July 17, 2013, the judge granted BOA's motion for summary judgment and denied the Maduras' motion for partial summary judgment.  The judge also granted BOA's motion to strike the forensic

10

reports and found they were wholly inadequate under the standards set forth in *Daubert*.

The judge concluded BOA was entitled to summary judgment on RESPA claims as a matter of law, because the Maduras had not established RESPA applied or BOA had violated any provision of the statute. As for BOA's foreclosure counterclaim, the district judge first addressed the Maduras' motion for partial summary judgment and BOA's standing to foreclose. The judge rejected the Maduras' argument that they had rescinded the loan and found their May 23, 2001, letter, even construed broadly, did not rescind their loan. The Maduras had ratified the loan by continuing to make payments on it after the claimed rescission. The judge found BOA properly had authenticated the note and allonge and rejected the Maduras' contention the note and allonge were defective because they were not stapled together. The judge also found the note was a negotiable instrument under Florida law. BOA's possession of the note, endorsed in blank, defeated the Maduras' arguments. The judge denied the Maduras' motion for partial summary judgment on the issue of BOA's standing to bring the foreclosure counterclaim.

The district judge subsequently addressed the Maduras' 71 affirmative defenses to the foreclosure counterclaim. The judge determined the doctrine of res judicata barred those affirmative defenses that were based on the Maduras' theory that the promissory note and TILA Disclosure had been forged and fraudulently

altered.  Specifically, the judge determined those issues had been adjudicated in *Madura 1*, *2*, and *3*.  The judge determined the Maduras' remaining affirmative defenses lacked merit or were not supported adequately by argument or law.

On July 23, 2013, the Maduras moved for reconsideration and argued BOA lacked authority to enforce the note because it had not paid the documentary taxes on the note, as required under Florida law.  The same day, they filed another motion for reconsideration and asserted the district judge had engaged in impermissible ex parte communications in acquiring the original loan documents from BOA.

On August 12, 2013, the district judge denied both motions for reconsideration.  Specifically on the Maduras' argument regarding ex parte communications, the judge noted Florida law required parties seeking to foreclose on a mortgage to produce the original note.  The judge found BOA had furnished the original loan documents in compliance with Florida law.  Accordingly, the judge concluded she had not engaged in ex parte communications.  The judge also found the relevant documentary taxes had been paid, because the note showed the payment of those taxes.  The judge entered a final decree of foreclosure on August 13, 2013.  On appeal, the Maduras challenge the district judge's grant of summary judgment to BOA on their RESPA claims and on the foreclosure counterclaim.  They also challenge numerous prior orders of the district judge.

## II. DISCUSSION

We review a judge's granting summary judgment de novo and view all evidence and draw all reasonable inferences in favor of the nonmoving party. *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1254 (11th Cir. 2012). Summary judgment is proper only "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citation and internal quotation marks omitted). "A genuine issue of material fact exists when a reasonable jury could return a verdict for the nonmoving party." *Id.* Presenting mere conclusions and unsupported factual allegations will not defeat a summary judgment motion. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam). We may affirm granting a district judge's grant of summary judgment "on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

While we read "briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (citation omitted). "A party fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (citation and

14

internal quotation marks omitted).  We have "long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."  *Id.*  We do not address arguments raised for the first time in a pro se litigant's reply brief.  *Timson*, 518 F.3d at 874.  Likewise, arguments raised for the first time on appeal, which were not presented in the district court, are deemed waived.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

As an initial matter, the Maduras have waived the following issues on appeal, either by failing to raise the issues in the district court or by failing to provide supporting arguments and authority on appeal: (1) whether BOA waived its foreclosure counterclaim by failing to raise it in *Madura 3* or *Madura 6*;[3] (2) whether BOA failed to refute the Maduras' contention that they did not receive proper consideration for the loan; (3) whether BOA entirely ignored the Maduras' fourteenth affirmative defense; and (4) whether BOA did not address the Maduras' first, twelfth, thirty-third, and fifty-fifth affirmative defenses.  Accordingly, we decline to address those issues.

---

[3] The Maduras actually argue the doctrine of res judicata bars BOA from filing for foreclosure.  Construing their brief liberally, however, it appears they misunderstood res judicata and intended to assert that BOA waived the counterclaim for foreclosure by failing to raise it in previous lawsuits.

A. RESPA Claims

On appeal, the Maduras argue pro se the district judge erred by finding their RESPA claims and defenses are without merit.  RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans.  *See* 12 U.S.C. § 2605.  RESPA provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person."  *Id.* § 2605(b)(1).  Subsection (c) similarly provides that: "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer."  *Id.* § 2605(c).

RESPA's implementing regulations provide, however, that the following transfers are not considered an assignment, sale, or transfer of mortgage loan servicing for purposes of the notice requirement: (1) transfers between affiliates; (2) transfers resulting from mergers or acquisitions of servicers or subservicers; and (3) transfers between master servicers, where the subservicer remains the same.  24 C.F.R. § 3500.21(d)(1)(i).

RESPA also provides a loan servicer, upon receipt of a QWR for information related to the servicing of a loan, must provide a written response acknowledging receipt of the QWR within 5 business days.  12 U.S.C.

16

§ 2605(e)(1)(A).  A QWR is a written correspondence that (1) allows the servicer to identify the name and account of the borrower, and (2) includes a statement of the reason for the borrower's belief that the account is in error or provides sufficient detail regarding other information sought by the borrower.  *Id.* § 2605(e)(1)(B).  The term "servicing" means receiving any scheduled periodic payments from a borrower under the terms of any loan and making the payments of principal and interest regarding the amounts received from the borrower as may be required by the loan.  *Id.* § 2605(i)(3).

RESPA further requires, within 30 business days of receipt of a QWR, the servicer must (1) make appropriate corrections in the account of the borrower and transmit a written notification of the correction; (2) after conducting an investigation, provide the borrower with a written explanation that includes a statement of the reasons for which the servicer believes the account is correct, and the name and telephone number of an employee or department that can provide further assistance; or (3) after conducting an investigation, provide the borrower with a written explanation that includes the information requested by the borrower or an explanation of why the information requested is unavailable, along with the name and telephone number of an employee or department that can provide further assistance.  *Id.* § 2605(e)(2).

If a loan servicer fails to comply with any of these provisions, an individual borrower may recover any actual damages caused by the failure, and up to $1,000 in statutory damages if there is a pattern or practice of noncompliance with RESPA. *Id.* § 2605(f). First, the Maduras have failed to provide any evidence or argument demonstrating that BOA or its predecessors were required to provide notice of a transfer, assignment, or sale of the servicing of their loan. The Maduras also have failed to demonstrate a transfer of the servicing of their loan occurred, as defined under the regulations. In fact, they admit in their amended complaint Countrywide changed its name to BAC Home Loans and BAC Home Loans subsequently merged with BOA. Servicers do not have to provide notice of transfers between affiliates or as the result of mergers. 24 C.F.R. § 3500.21(d)(1)(i).

Second, the Maduras' communications with BOA do not constitute QWRs. Moreover, a review of the Maduras' letters to BOA and its predecessors reveals the correspondence does not relate to the servicing of their loan. Rather, within the letters, the Maduras asserted their loan documents had been forged, warned the servicers not to transfer the loan, and accused the servicers of committing mail fraud. In addition, the Maduras have offered no competent evidence demonstrating actual damages caused by RESPA violations. *See* 12 U.S.C. § 2605(f). To the extent the Maduras raise the purported RESPA violations as an affirmative defense

to foreclosure, they have not demonstrated how a RESPA violation would preclude a foreclosure. Accordingly, the Maduras have failed to establish a genuine dispute of material fact concerning the alleged RESPA violations, and the district judge did not err by granting summary judgment to BOA on those claims.

B. Foreclosure Counterclaim

1. Preclusion of Forgery and Fraud-Based Arguments

We review de novo the application of res judicata and collateral estoppel. *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1069 (11th Cir. 2013). When determining whether to give preclusive effect to a federal judgment, we apply federal common law. *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1179 (11th Cir. 2013).[4] Collateral estoppel "operates to bar the introduction or argumentation of certain facts necessarily established in a prior proceeding." *Id.* at 1180 (citation and internal quotation marks omitted). In this circuit, a party seeking to apply the doctrine of collateral estoppel must establish "(1) the issue at stake is identical to the one involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the determination of the issue must have been a critical and necessary part of the earlier judgment; and (4) the party against whom collateral estoppel is asserted must have had a full and fair

---

[4] Federal preclusion principles bar the Maduras' claims arising from the July 26, 2000, loan transaction, based on the federal decisions in *Madura 2* and *3*. Therefore, we need not determine whether state preclusion principles also bar those claims based on the state-court's judgment in *Madura 1*.

19

opportunity to litigate the issue." *Id.* (citation, internal quotation marks, and ellipsis omitted). Under federal common law, collateral estoppel is not limited to actions between the same parties and their privies. "A defendant who was not a party to the original action may invoke collateral estoppel against the plaintiff." *Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986).

Collateral estoppel bars the Maduras from relitigating all claims that they raised or could have raised in their initial state-court action, including the following issues: (1) whether they had rescinded the July 26, 2000, loan through the May 23, 2001, letter; (2) whether their loan documents had been forged and fraudulently altered; (3) whether their loan was usurious; and (4) any other issues arising from the July 26, 2000, loan transaction.

In *Madura 2*, the district judge found the doctrine of res judicata prevented Dolinska-Madura from relitigating any claims that arose from the July 2000, loan transaction, including her fraud, usury, and TILA claims and any variations of those claims, because the state court had finally adjudicated those claims in *Madura 1*. The district judge dismissed Madura's claims, finding he had to arbitrate them. We affirmed. *Madura*, 344 F. App'x at 517-18. Likewise, in *Madura 3*, the district judge dismissed the case with prejudice and found all claims in the action, including the issue of whether the Maduras had rescinded the loan,

were barred by the doctrine of res judicata, because they had been addressed and finally adjudicated in *Madura 1* and *2*.

Since the district judges in *Madura 2* and *3* had determined Dolinska-Madura's claims arising from the July 26, 2000, loan transaction were precluded by res judicata and Madura had to arbitrate those claims, the doctrine of collateral estoppel precluded the judge in this case from adjudicating those claims on the merits. *See Tampa Bay Water*, 731 F.3d at 1180. To the extent the Maduras challenge granting summary judgment to BOA or any other order of the district judge based on claims they raised or could have raised in *Madura 1*, we may not consider their arguments. The Maduras ratified the loan by continuing to make monthly payments on the loan until November 2006. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1355 (11th Cir. 2011) (stating, under Florida law, ratification of an agreement "occurs where a person expressly or impliedly adopts an act or contract entered into in his or her behalf by another without authority" (citation and internal quotation marks omitted)).

2. BOA's Standing to Foreclose

The Maduras also argue on appeal that BOA lacks standing to foreclose, because (1) the note is not a negotiable instrument; (2) the note and allonge were not authenticated; (3) the allonge was infected with fraud; (4) the allonge was not affixed to the note; (5) BOA does not own the note or mortgage; (6) BOA is not a

21

real party in interest; (7) BOA is merely an agent that constructively possesses the note for another entity; and (8) BOA is not a holder in due course.

When a district judge exercises supplemental jurisdiction over state-law claims, state law governs substantive issues and federal law governs procedural issues. *McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004). Under Florida law, the term "negotiable instrument" means "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order." Fla. Stat. § 673.1041(1). An instrument is not negotiable if it states "any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." *Id.* § 673.1041(1)(c). Florida courts generally have found that promissory notes, secured by a mortgage, are negotiable instruments. *See, e.g.*, *Harvey v. Deutsche Bank Nat'l Trust Co.*, 69 So. 3d 300, 303 (Fla. 4th Dist. Ct. App. 2011) (per curiam) (holding a note, endorsed in blank, was a negotiable instrument subject to the provisions of Chapter 673 of the Florida Statutes); *Riggs v. Aurora Loan Servs., LLC*, 36 So. 3d 932, 933 (Fla. 4th Dist. Ct. App. 2010) (per curiam) (same); *Taylor v. Deutsche Bank Nat'l Trust Co.*, 44 So. 3d 618, 622 (Fla. 5th Dist. Ct. App. 2010) (noting "a promissory note is a negotiable instrument"); *Perry v. Fairbanks Capital Corp.*, 888 So. 2d 725, 727 (Fla. 5th Dist. Ct. App. 2004) (recognizing a "promissory note is clearly a negotiable instrument" under Florida law).

22

The party entitled to enforce a promissory note, secured by a mortgage, is the holder of the instrument. *U.S. Bank Nat'l Ass'n v. Knight*, 90 So. 3d 824, 826 (Fla. 4th Dist. Ct. App. 2012). "A 'holder' is someone who is 'in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession . . . .'" *Id.* (quoting Fla. Stat. § 671.201(5)). The "bearer" is someone in possession of a negotiable instrument that is payable to bearer or endorsed in blank. *Id.* "Thus, to have standing, an owner or holder of a note, endorsed in blank, need only show that he possessed the note at the institution of a foreclosure suit; the mortgage necessarily and equitably follows the note." *Id.* A party need not be a holder in due course in order to enforce a note by foreclosing the mortgage. *Taylor*, 44 So. 3d at 622.

Under Florida law, "commercial papers and signatures thereon and documents relating to them are self authenticating." *Riggs*, 36 So. 3d at 933 (citation, internal quotation marks, and alterations omitted). In addition, the "authenticity of, and authority to make, each signature on [a negotiable] instrument is admitted unless specifically denied in the pleadings." Fla. Stat. § 673.3081(1). If the validity of a signature is denied, the burden of establishing the validity generally "is on the person claiming validity, but *the signature is presumed to be authentic and authorized.*" *Id.* (emphasis added). The effect of the § 673.1081(1) presumption is to require the party challenging the signature to produce evidence

23

supporting a finding that the signature was forged or unauthorized. *See Bennett v. Deutsche Bank Nat'l Trust Co.*, 124 So. 3d 320, 322-23 (Fla. 4th Dist. Ct. App. 2013) (per curiam) (holding defendants had failed to offer evidence showing signatures on the alonges were unauthentic and affirming grant of summary judgment to plaintiff on foreclosure action).

BOA has established its standing to foreclose on the Maduras' mortgage. Florida courts generally have held that ordinary mortgage promissory notes are negotiable instruments, and the Maduras have not identified in their initial brief which provisions of the note destroy its negotiability. *See Timson*, 518 F.3d at 874 (recognizing issues not briefed on appeal by a pro se litigant, as well as issues raised for the first time in a pro se litigant's reply brief, are deemed abandoned). To the extent, if any, the Maduras argue the note is not negotiable because of late-charge and prepayment-penalty provisions, their argument fails. A negotiable instrument is an "unconditional promise or order to pay a fixed amount of money, with or without interest *or other charges described in the promise or order.*" Fla. Stat. § 673.1041(1) (emphasis added).

The Maduras also have failed to provide admissible evidence supporting their assertions that the note and allonge were not authenticated. As discussed in more detail below, the Maduras are precluded from arguing their signatures on the note were forged, and the district judge properly struck Vastrick's forensic report

24

calling into question the signatures on the allonge.  Therefore, the Maduras have presented no evidence to overcome the presumption that the note and allonge contained authorized and authentic signatures.  *See Bennett*, 124 So. 3d at 322-23. The district judge found, and the Maduras have produced no evidence to the contrary, that the note and allonge currently are not attached, because BOA has had to separate, copy, and produce each document numerous times.

Finally, BOA has standing to foreclose on the mortgage, because it possessed the note, endorsed in blank, and possessed the note prior to filing the foreclosure counterclaim.  The mortgage necessarily and equitably followed the note.  *See Knight*, 90 So. 3d at 826.  BOA need not demonstrate it is a holder in due course in order to foreclose.  *Taylor*, 44 So. 3d at 622.

3. Amount of Debt Owed

The Maduras argue BOA has failed to prove the amounts due and owing under the note with admissible evidence.  They contend they have paid the loan in full.  We review the district judge's evidentiary rulings for abuse of discretion. *Cynergy, LLC v. First Am. Title Ins. Co.*, 706 F.3d 1321, 1326 (11th Cir. 2013). Federal Rule of Evidence 803(6) permits a court to admit hearsay evidence if the record was made at or near the time that someone with knowledge transmitted the recorded information; the record was kept in the course of a regularly conducted activity of a business; the regular practice of that activity included making the

25

record; the testimony of the custodian of the records or another qualified witness proves all of these conditions; and "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(A)-(E). It is not necessary for the person who actually prepared the documents to testify "so long as other circumstantial evidence and testimony suggest their trustworthiness." *Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1259 (11th Cir. 1983).

The Maduras' bare assertion the amount of debt owed is incorrect cannot defeat a summary judgment motion. *Ellis*, 432 F.3d at 1326. BOA, on the other hand, presented numerous business records establishing the Maduras had defaulted on their loan and setting forth the amounts actually paid on the loan. Brieanne Siriwan, an officer of BOA, attested that she was familiar with those business records and has personal knowledge of BOA's procedures for creating such records. She further stated the records were (1) made at or near the time of the occurrence of the matters recorded, by a person with personal knowledge of the information; (2) kept in the course of BOA's regularly conducted business activities; and (3) created by BOA as a regular practice. Consequently, the district judge did not err by considering those documents under the business-records exception to the hearsay rule. *See* Fed. R. Evid. 803(6).

4. Burden under *Celotex v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986)

26

The Maduras argue that BOA failed to meet its burden on summary judgment under *Celotex* to identify the parts of the record that indicate the absence of a genuine issue of material fact. The Maduras' argument lacks merit. The Supreme Court in *Celotex* held that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. BOA provided a "Statement of Undisputed Facts," which identified the portions of the record that it believed demonstrated the absence of a genuine issue of material fact.

5. Ex Parte Communications

The Maduras appear to argue the district judge engaged in prohibited ex parte communications, when she acquired the original loan documents from BOA. Under Florida law, "a party who seeks to foreclose on a mortgage must produce the original note." *Deutsche Bank Nat'l Trust Co. v. Clarke*, 87 So. 3d 58, 61 (Fla. 4th Dist. Ct. App. 2012). The district judge ordered BOA to produce the original note, as required under Florida law. BOA's subsequent tendering of the note was not an impermissible ex parte communication.

6. Statute of Limitations for Foreclosure Actions

The Maduras argue the statute of limitations to file for foreclosure in this case began to run on April 23, 2007, based on Countrywide's first notice of default. They contend BOA filed for foreclosure on May 2, 2012, after the deadline to file had expired. In Florida, an action to foreclose a mortgage must be brought within five years after the right to foreclose accrues. Fla. Stat. § 95.11(2)(c). The statute of limitations on a mortgage foreclosure action does not begin to run until the last payment is due, unless the mortgage contains an acceleration clause. *Locke v. State Farm Fire & Cas. Co.*, 509 So. 2d 1375, 1377 (Fla. 1st Dist. Ct. App. 1987). When the mortgage contains an acceleration clause, the statute of limitations begins to run when the loan is accelerated. *See id.* If an acceleration clause is absolute, then the entire indebtedness becomes due immediately upon default, but if the acceleration clause is optional, acceleration of the payments does not occur unless the option is exercised. *Cook v. Merrifield*, 335 So. 2d 297, 299 (Fla. 1st Dist. Ct. App. 1976).

The Maduras' mortgage contains an optional acceleration clause. In accordance with the acceleration clause, BOA sent the Maduras a default letter on April 23, 2007, which notified them that the failure to cure the default on or before May 23, 2007, would result in the acceleration of their loan and commencement of a foreclosure proceeding. The district judge concluded BOA accelerated the loan

28

on May 23, 2007, when the Maduras failed to cure the default. Although BOA argues it did not accelerate the loan until it filed this foreclosure action, we need not decide that issue, because the loan was accelerated on May 23, 2007, at the earliest. Accordingly, BOA timely filed its counterclaim for foreclosure within the five-year deadline, on May 2, 2012.

7. Forensic Document Examination Reports Under *Daubert*

The Maduras argue the district judge abused her discretion by striking and refusing to consider Vastrick's forensic-document-examination reports. They further contend the judge abused her discretion by refusing to hold a *Daubert* hearing. We review a district judge's exclusion of expert reports for abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007). "As the Supreme Court recognized in *Daubert* . . . [Federal Rule of Evidence 702] contemplates that the district court will serve as a gatekeeper to the admission of scientific testimony." *Tampa Bay Water*, 731 F.3d at 1183. Under *Daubert* and its progeny, we conduct a three-part inquiry to determine the admissibility of expert testimony, weighing whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Id.* Although

29

*Daubert* hearings "are often helpful," they are not a prerequisite to determine the admissibility of expert testimony under the Federal Rules of Evidence or established law. *Corwin*, 475 F.3d at 1252 n.10.

The district judge did not abuse her discretion by striking Vastrick's forensic reports. Although Vastrick likely was qualified to testify competently about document forgery and alteration, based upon the information in his curriculum vitae, no record evidence sets forth the specific methodology Vastrick used to make his findings or stated whether his methods were sufficiently reliable. Consequently, the Maduras have not met the three-part test under *Daubert* to allow the admissibility of Vastrick's reports. *Tampa Bay Water*, 731 F.3d at 1183. Furthermore, the district judge was well within her discretion in refusing to hold a *Daubert* hearing, because the record evidence failed to meet the *Daubert* requirements on its face. *Corwin*, 475 F.3d at 1252 n.10.

8. The Doctrine of Laches

The Maduras further argue the doctrine of laches estopped BOA from pursuing foreclosure. They contend BOA purposefully delayed filing for foreclosure in order to accrue additional interest on the loan. The equitable doctrine of laches "prevents a plaintiff who has slept on his rights from enforcing those rights against a defendant." *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1319 (11th Cir. 2008). The doctrine generally

30

"does not come into play until the period prescribed by the applicable statute of limitations has expired." *Briggs v. Estate of Geelhoed*, 543 So. 2d 332, 333 (Fla. 4th Dist. Ct. App. 1989). Laches may apply, however, "when an unreasonable delay results in prejudice to the rights of the party against whom enforcement of a debt or other obligation is sought." *Id.*

The doctrine of laches does not bar BOA from foreclosing on the Maduras' mortgage. BOA timely filed the foreclosure counterclaim within the applicable statute of limitations, and the Maduras have not established BOA unreasonably delayed in bringing the action. Although the Maduras argue the delay in the action resulted in prejudice to them, their argument lacks merit. Moreover, the Maduras benefitted from any delay by continuing to reside in their home for several years without making any payments on their loan.

9. Documentary Taxes

The Maduras argue BOA failed to pay the required documentary taxes on the note and, as a result, may not foreclose on their mortgage. This argument is unavailing. In Florida, "in an action to enforce a promissory note the plaintiff must establish, as a condition precedent to pursuing the action, that the [documentary] taxes due on the note have been paid." *Somma v. Metra Elecs. Corp.*, 727 So. 2d 302, 304 (Fla. 5th Dist. Ct. App. 1999) (citing Fla. Stat. § 201.08(1) (1997)). The July 26, 2000, promissory note at issue in this case states: "The state documentary

31

tax due on this Note has been paid on the mortgage securing this indebtedness."

ROA at 4351. The Maduras provide no evidence to the contrary.

10. Conditions Precedent to Foreclose

The Maduras argue BOA failed to comply with paragraph 22 of the

mortgage, which set forth the requirements for notifying them of a default. They

further argue BOA failed to comply with a particular consent judgment and with

certain United States Department of Housing and Urban Development ("HUD")

regulations, which they contend are prerequisites to foreclosure.

Under the terms of the mortgage at issue in this case, the lender had to give

notice to the Maduras prior to acceleration following the Maduras' breach. The

notice specifically had to specify "(a) the default; (b) the action required to cure the

default; (c) a date, not less than 30 days from the date the notice is given to

Borrower, by which the default must be cured; and (d) that failure to cure the

default on or before the date specified in the notice may result in acceleration."

ROA at 4362.

BOA and its predecessors complied with all conditions precedent to

foreclosure. In the first notice of default, dated April 23, 2007, Countrywide

informed Madura that his loan was in default, and that in order to cure the default,

he had to pay $8,259.88, plus any additional regular monthly payment or

payments, late charge, and fees and charges, which became due on or before May

23, 2007.  The notice also stated Countrywide had to receive that sum on or before May 23, 2007, and the failure to cure the default would result in acceleration. Likewise, BOA's re-notice of default informed Madura of the default and the actions required to cure the default.  Although undated, the re-notice of default directed Madura to cure the default within 30 days.  The Maduras' arguments relating to a consent judgment and HUD regulations are unavailing.  They have not explained how BOA failed to comply with the judgment and regulations, nor have they presented any evidence establishing that BOA failed to comply with them or that the failure to comply somehow prevented foreclosure.

11. Unclean Hands

The Maduras argue BOA had unclean hands, because it (1) breached the terms of the mortgage by sending improper notice of acceleration; (2) ratified Countrywide's misconduct by obtaining a forged note; and (3) filed a wrongful foreclosure, because it knew the note and TILA Disclosure had been fabricated. This argument is fails.  BOA provided proper notice of acceleration to the Maduras.  In addition, preclusion principles bar the Maduras' argument that BOA had unclean hands based on any forgery or fabrication of loan documents.

12. Outstanding Discovery

The Maduras also argue the district judge abused her discretion by ruling on summary judgment when numerous discovery motions were still pending.  District

33

judges have broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery. *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014). We will not overturn a discovery ruling unless the district judge's ruling resulted in substantial harm to an appellant's case. *Id.* Generally, summary judgment should not be granted until the nonmoving party has had an adequate opportunity to conduct discovery. *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989) (per curiam). Nevertheless, there is no "blanket prohibition on the granting of summary judgment motions before discovery" is fully complete. *Id.*

The district judge did not abuse her discretion by denying the Maduras' repeated requests to compel additional discovery. Significantly, the district judge granted several of the Maduras' discovery motions and ordered BOA to produce certain records. Moreover, the judge extended the discovery deadline, in response to requests from both BOA and the Maduras, in order to permit the conclusion of depositions and other production. Having allowed the parties to engage in extensive discovery, the district judge did not abuse her discretion by denying additional discovery. The Maduras have failed to explain how the denial of certain discovery rulings resulted in substantial harm to their case. To the extent they argue they were harmed because of fraud and alleged forgery concerning their loan documents, those arguments are barred.

C. Miscellaneous Motions

Finally, the Maduras challenge numerous orders striking or denying various motions, including motions to dismiss BOA's foreclosure counterclaim and motions for summary judgment on BOA's foreclosure counterclaim. The district judge did not abuse her discretion by striking or denying any of the Maduras' referenced motions. The Maduras filed many of their motions well past the deadlines to file amended pleadings or to file dispositive motions, and they filed other motions in violation of the district court's local rules. We give "great deference to a district court's interpretation of its local rules." *Fils v. City of Aventura*, 647 F.3d 1272, 1282-83 (11th Cir. 2011) (citation and internal quotation marks omitted). Likewise, we defer to the district judge's "inherent authority to manage [her] own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991)).

## III. CONCLUSION

The Maduras have failed to establish a genuine dispute of material fact on their RESPA claims or the foreclosure counterclaim, and BOA has established it is entitled to summary judgment as a matter of law.

**AFFIRMED.**

35